**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

Beatriz Torres Dennis as Personal
Representative of the Estate of
Andrew Orval Torres, deceased,

               Plaintiff,

      -vs-                         Case No.  6:12-1767-JMC

City of Greenville, Teri Wilfong,
Eric Koepke, Kevin Hill, Dalemarty Dirton,
C.E. Tarkenton, M. C. Dean, and A. Johnson.
                Defendants.

---

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

      The Plaintiff, by and through her undersigned attorneys and complaining of the defendants, hereby allege the following facts:

**PREFACE**

      The Plaintiff, Beatriz Torres Dennis, as Personal Representative of the Estate of her brother, Plaintiff-Decedent Andrew Orval Torres, brings this civil rights action against the City of Greenville and individual law enforcement officers involved in causing Andrew's death on August 9, 2010.  Andrew died under restraint by officers executing a judicial order to take Andrew into protective custody for transport to the hospital to treat his mental illness.

      This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights to be free from unreasonable seizures under the Fourth and Fourteenth Amendments of the United States Constitution.  Federal claims of wrongful death and survival are brought against individual officers for use of excessive force by

1

deploying multiple tasers over an extended time and improper physical restraint technique while taking a passively resistant emotionally disturbed individual into protective custody.  This unprovoked assault and restraint were the sole and proximate causes of his death.  Plaintiff alleges federal claims against Chief of Police Wilfong and the City of Greenville based on theories of supervisor and municipal liability for unconstitutional official policies, customs and practices that violated the decedent's constitutional rights.

Federal claims are also brought under The Americans with Disabilities Act - 42 U.S.C. §12101 et seq., and §504 of the Rehabilitation Act of 1973 - 29 U.S.C. §794, for failure of the City of Greenville to properly accommodate and develop adequate policies for taking law abiding citizens who have committed no crime, but are in medical crisis, into custody for their own protection.  Plaintiff brings claims for compensatory damages, for declaratory and injunctive relief from the City of Greenville's discriminatory practices towards the mentally disabled.

Plaintiff also brings wrongful death and survival claims under the common law of South Carolina against the Defendant City of Greenville pursuant to the South Carolina Tort Claims Act under theories of negligence, assault and battery.

### JURISDICTION AND VENUE

1.      Jurisdiction is founded on federal question jurisdiction to 28 U.S.C. §1331and declaratory relief 28 U.S.C. §§ 2201 and 2202.  Venue is properly within this district and division under 28 U.S.C.§1391(a)(2), (b)(2), and the Local Rules of the South Carolina District Court as the events which give rise to this litigation occurred in the district of South Carolina.  Plaintiff further invokes the court's jurisdiction under 28 U.S.C.§1367

(supplemental jurisdiction) to hear claims arising under South Carolina common law against City of Greenville pursuant the South Carolina Tort Claims Act *S.C. Code Ann.* § 15-78-10, *et seq.* and the South Carolina Wrongful Death and Survival Statute *S.C. Code Ann.* § 15-51-10, *et seq.*

## PARTIES

2.      Plaintiff Beatriz Torres Dennis, is the duly appointed Personal Representative for the Estate of her brother, Andrew Orval Torres, the Plaintiff-Decedent in this action. Plaintiff Dennis is a citizen and resident of South Carolina.  The deceased, Andrew Orval Torres, was a citizen and resident of South Carolina until his death on August 9, 2010.

3.      The Defendant officers, Eric Koepke, Kevin Hill, Dalemarty Dirton, C.E. Tarkenton, M. C. Dean, and A. Johnson are, upon information and belief, citizens and residents of South Carolina, at all times relevant hereto, acted under the color of state law and in the course and scope of their employment as officers with the Greenville City Police Department. They are sued in their individual capacities for compensatory and punitive damages under 42 U.S.C. § 1983 only.

4.      The Defendant City of Greenville is a political entity organized under the laws of the State of South Carolina. The City of Greenville is the appropriate party defendant for state law claims pursuant to S.C. Code §15-78-10, which makes the employing agency statutorily liable for the acts and omissions of its officers acting in the course and scope of their official duties. The City of Greenville is sued for compensatory damages under state law based on the acts and omissions of officers Koepke, Hill, Dirton, C.E. Tarkenton, M. C. Dean, and A. Johnson, for the acts and omissions in the seizure of the deceased plaintiff, Andrew Torres. The City is also sued under 42 U.S.C. § 1983 for

compensatory damages for having a municipal policy that fails to train officers in the appropriate procedures for taking mentally ill citizens into protective custody that proximately caused Andrew's death or, alternatively, the City of Greenville has a custom and practice of using unconstitutional force to take citizens into protective custody. Finally, the City of Greenville is also a defendant in claims arising under Title II of the American with Disabilities Act and § 504 of the Rehabilitation Act for compensatory and declaratory relief for discrimination against the mentally ill and failing to accommodate their disabilities.

5.      Chief of Police Wilfong is sued in her individual capacity for claims of supervisor liability.  As the policy maker for the City of Greenville in law enforcement matters and as Chief of the Police Wilfong failed to promulgate adequate policies and failed to supervise her subordinates who use unconstitutional levels of force in taking mentally ill citizens into protective custody.  She is sued in her individual capacity under 42 U.S.C. § 1983 law for compensatory and punitive damages. She was at all relevant times acting in the course and scope of her duties as Chief of Police of the City of Greenville and under color of law.

## FACTUAL ALLEGATIONS

6.      At the time of the events complained of, Andrew Torres was a 39 year old citizen and resident of Greenville South Carolina.   He was raised in Greenville, graduated from Greenville High School, and from the University of South Carolina Spartanburg with a Bachelor of Arts in 2004.    At the age of 21 he began to experience symptoms of schizophrenia of the paranoid type.   Andrew's schizophrenia was an organic brain disorder and was not precipitated by drug use or other outside behavior or events.   He

4

was formally diagnosed with this condition in 1992 and began receiving regular medical treatment.  He was classified as a person with a disability under the Social Security Act resulting solely from his brain disorder in 2005 and remained so classified until the date of his death on August 9, 2010.

7.     Andrew's disease was managed through medication and family support.  He resided with his parents in the family home from the age of 36 until the time of his death.  During the course of his treatment, from time to time medication would become ineffective and he would start to decompensate.  He would then be at risk for non-compliance with medication and could spiral into paranoia which jeopardized his personal safety.  During these times of decomposition, he would become irrational and hyper-paranoid.  He would generally refuse voluntary medical treatment.

8.     On these occasions, the family would apply to Greenville County Probate Court for an order of involuntary commitment in order to have Andrew taken into protective custody by a local hospital to assess and address his treatment needs.  Under South Carolina law, local law enforcement has a duty to assist with such judicial orders and take individuals into protective custody for transport to the hospital. The commitment is not based on any criminal behavior and is not an arrest but is solely to protect the individual from deteriorating further and causing permanent mental injury and possible death to himself.

9.     In late July of 2010, the family began to notice some distinct changes in Andrew's demeanor and monitored his behavior.  They became convinced he needed additional assessment and treatment offered by inpatient commitment. On August 9, 2010, an Order

5

of Detention was issued by Hope Barbrey, Deputy Probate Judge for Greenville County, for the Involuntary Emergency Hospitalization of Andrew Torres.

10.     Prior to August 9, 2010, the Greenville Police Department had been called on numerous occasions to take Andrew to the Hospital Emergency Room to be treated for his disabling conditions; therefore, the Greenville Police Department and its officers and agents had prior knowledge of Andrew's serious medical conditions and mental disabilities which regularly required emergency medical attention.  They were also on notice that confrontational and aggressive tactics were counterproductive in peacefully taking Andrew into custody and produced a physical reaction of passive resistance to avoid being taken to the hospital.  The Greenville Police had on occasion used individuals in plain clothes who were, upon information and belief, properly trained to take Andrew (and individuals like him) into custody without incident.

11.     The Order of Detention was taken personally to the City of Greenville Police Department by Plaintiff's sisters, Lisa Unkauf, Pauline Jarrard, and Plaintiff's father, Frank Torres.  The family discussed Andrew Orval Torres' condition with Officers Allen, Officer Hill and Officer Koepke.  They requested a plain clothes officer who had training in taking delirious and emotionally disturbed individuals into protective custody. While at the Law Enforcement Center, they discussed the delusional state of Mr. Torres and his expected reaction to uniformed police.   The Torres family indicated that prior interaction with aggressive uniformed police precipitated a fearful reaction and was counterproductive to taking him into custody without incident.

12.     They were assured by Officer Hill and Koepke that they had the requisite training in taking emotionally disturbed individuals into custody.   All agreed that the family

would meet the officers at the residence. While enroute, Hill and Keopke asked for additional assistance from Officer Dirton while they served the protective custody warrant.

13.    Ms. Lukauf and Jarrard arrived at the home prior to the police. They went into Andrew's back bedroom.  They found Andrew sleeping.  They woke him up and advised him he needed to get dressed.   He was cooperative, got out of bed and began to get dressed.

14.    During this time, Officers Kevin Hill, Eric Koepke had met up with Officer Dirton outside the residence.  They walked into the residence through the front door without knocking or announcing their presence to the family. Upon hearing the screen door shut, Ms. Jarrard left the bedroom and met the officers in the living room.  She explained that Andrew was just waking up and her sister Lisa Unkauf was with him as he was getting dressed.  Ms. Jarrard asked the officers to stay out of sight in the living room until they could bring Andrew out to the officers.  She returned to the room to assist Andrew and escort him to the waiting officers.

15.    When she returned to the room, Lisa had begun to cry but the sister's assured Andrew and he continued to get dressed.   Although confused about what was happening, he was not acting erratically or showing any aggression towards his sisters.

16.    Despite the passive nature of his encounter with his sisters, Officers Hill, Koepke and Dirton came into view down the hallway in full uniforms moving rapidly towards Andrew's bedroom.  Upon seeing the police, Andrew Torres attempted to close his bedroom door.  Officer Hill was able to wedge his boot in at the base of the door while Officers Koepke and Dirton pushed on the door. Officer Dirton was yelling, commanding

Andrew Torres to open the door. Contrary to policy, none of the officers approached Andrew Torres in a non-threatening manner or explained why they were there. Instead, they began the encounter in a very threatening manner with a predictable response from a known paranoid schizophrenic, i.e., that he would attempt to hide from the police.

17.     Instead of stepping back and deescalating the situation, Officer Hill wedged his body in the small gap between the door frame and the door. Despite meeting only passive resistance, not active aggression towards the officers, Hill told Keopke to tase Andrew Torres. When deployed, a taser sends a tremendous voltage of electricity through an individual's body paralyzing the muscles and preventing the subject from physical control of his body. Koepke deployed his taser in dart mode with both talon-like probes penetrating Andrew's arm.

18.     Instead of doing a single, five-second cycle and reassessing the situation, Keopke kept continuously repeating the five-second cycle eight times for a total of forty seconds of severe electrical shock. As Andrew Torres was yelling in pain from Keopke's taser, Officer Hill deployed his taser in dart mode striking and penetrating Andrew in the back. Upon information and belief, Officer Hill ran a similar and\or greater number of cycles on Andrew. Andrew, yelling in pain, gave way, the officers breached the door, and all three of them were on top of Andrew throwing him to the floor of his bedroom.

19.     Officer Hill then switched his taser from dart mode to drive stun mode. Drive stun mode exposes two separate electrical prongs. Officer Hill began to tase Andrew. This mode of use is not effective in immobilizing the subject and is used for pain compliance. Andrew was drive stunned directly in his back. Officer Dirton attempted to handcuff Andrew and was yelling at him to place his hands behind his back and stop

resisting. This command was particularly inappropriate as the taser in his arm prevented any movement of that limb. Additionally, Andrew had not been told why the officers were present and since he was not under arrest, he was not resisting. The confrontational nature of the command only served to escalate Andrew's fear and anxiety.

20.     As Torres attempted to defend himself from the excessive force and unprovoked assault by the officers, he was thrown to the ground chest down and Officer Dirton was able to wrench Andrew's arms behind his back and handcuff him. They held Andrew face down on his stomach. Officer Hill held Andrew's down on his upper body down and Officers Kopeke and Dirton held Andrew's lower extremities. Andrew complained that he was burning up and felt like throwing up. The officers continued to exert weight and pressure on him, placing their knees into Andrew's back until Andrew was physically exhausted and experiencing respiratory problems.

21.     Upon information and belief, Officer Dirton got off Andrew and called for a supervisor to come to the house. When Andrew realized a "black officer" was one of the officers assaulting him, he became more fearful and irrational. Officer Dirton was approached by Ms. Jarrard, who explained that Andrew had been assaulted by a black man while in a mental health institution and was very fearful. Despite knowing his presence would further escalate the situation, Officer Dirton rejoined the defendants' assault upon Andrew.

22.     While waiting for the arrival of a supervisor, Andrew was not able speak intelligibly, mumbled incoherently, and was unable to respond to questions. He had been subjected to an excessive amount electrical shock, had been physically assaulted, had been yelled at continuously,  and had been  forced to lie on his stomach handcuffed

behind his back while three officers pressed down upon his body.  At no time did an officer attempt to talk to Andrew or assure him they were not there to hurt him.

23.     Officer Dean arrived and observed the tasers in Andrew's back as Officers Hill and Keopke remained on top of him.  Upon information and belief, Officer Dean called for EMS to come to the scene to address the injuries received by Andrew, specifically the taser darts and abrasions to his body.   Officer Dean further requested a "hold" on all dispatch communication from other officers so they could deal with the evolving situation without dispatch interruption.

24.     Sgt. Tarkenton arrived and went into the bedroom.  He tried to communicate with Andrew but Andrew was becoming more agitated by the increasing number of uniformed officers and was unresponsive.   Sgt. Johnson arrived shortly thereafter and observed that Andrew had been the subject of multiple tasers, had been in an extended struggle with the officers, was laying face down on the floor, was handcuffed in the back, and three officers were using "all their might to hold him down".   Sgt. Johnson asked Officer Dean to assist in finding a pair of leg irons to place on Andrew.

25.     While waiting for EMS to arrive, the officers continued to apply full restraint on Andrew's back and body, while he was still face down with arms cuffed behind his back.  Sgt. Tarkenton took out a camera and took pictures of Andrew to document the taser probes during this time.  Sgt. Tarkenton and Sgt. Johnson then stood by while Officers Hill, Koepke and Dirton held down Andrew as he lay scared unable to breathe.  Andrew's color began to change, his fingers went purple, and then he went limp dying from the trauma of the tasers, weight of the officers and anxiety that inevitably results when mentally ill citizens are aggressively assaulted without explanation.

26.    It was not until this time that the officers got off of Andrew. They could find no pulse. They did not begin any resuscitation attempt or CPR. Indeed, they left Andrew lying face down on the floor, still in handcuffs, until EMS arrived a short time later. EMS had to ask for the cuffs to be removed and they then immediately initiated CPR and other life saving measures.

27.    Andrew Torres lifeless body was transported to Greenville Memorial Hospital where he arrived in full cardiac/respiratory arrest, unresponsive and was pronounced dead.

## THEORIES OF RECOVERY

### FOR A FIRST CAUSE OF ACTION
**42 USC 1983 4th Amendment Claim of Excessive Force Against
Defendants Hill, Koepke and Dirton Survival and Wrongful Death Claim**

The plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

28.    Andrew Torres was forced to endure great conscious pain and suffering before his death. Andrew Torres filed no action during his lifetime, but under the laws of South Carolina this action survives and may be asserted by his Estate under the Survival Statute *SC Code Ann*., § 15-5-90, 1976, as amended. Plaintiff claims damages for the wrongful death of her brother, Andrew Torres, and for the loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses under 42 U.S.C. 1983 and the South Carolina Wrongful Death Statute *SC Code Ann*., § 15-51-10 et al, 1976, as amended.

29.    The acts and omissions of Defendants Hill, Koepke, and Dirton by deploying tasers and applying unnecessary force after handcuffing a mentally disabled Andrew when he was not accused of committing any crime, had only offered passive resistance to

law enforcement attempts to take him into protective custody, and when the defendants had no reasonable basis to believe that Andrew posed any threat during the course of the seizure, constitutes the use of unreasonable and excessive force in violation of Plaintiff-Decedent's Fourth Amendment rights. As a direct and proximate result of the unreasonable use of force, Andrew suffered great physical harm and conscious pain and suffering, tremendous emotional and psychological anxiety and ultimately his death.

## FOR A SECOND CAUSE OF ACTION
### §1983 Fourth Amendment violation on a theory of bystander liability for failure to protect the Plaintiff from excessive force against Officers Dean, Tarkenton, and Johnson
### Survival and Wrongful Death Claim

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein;

30.    Officers Dean, Tarkenton, and Johnson were deliberately indifferent to the violation of decedent Plaintiff Torres right to be free from excessive force.  They were aware that he had mental illness and was being taken into protective custody, that he had been tased by fellow officers, and saw that he was forcibly detained facedown, handcuffed behind the back with officers on top of him placing him in an asphyxiation position.   Dean, Tarkenton, and Johnson failed to take any action to prevent or discontinue the assault.

31.    The Defendants Dean, Tarkenton, and Johnson knew that fellow Officers Hill, Koepke, and Dirton were violating Andrew Torres' constitutional rights, all had a reasonable opportunity to prevent the harm and each choose not to act.

32.    As a direct and proximate result, Andrew's constitutional right to be free from excessive force under the Fourth Amendment was violated and he suffered conscious pain and suffering and ultimately caused his death.

## FOR A THIRD CAUSE OF ACTION
**Officers Hill, Koepke, Dirton, Dean, Johnson and Tarkenton**
**1983 conspiracy to violate Plaintiff's Fourth Amendment Rights**
**Survival and Wrongful Death**

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

33.     Officers Hill, Koepke, Dirton, Dean, Johnson and Tarkenton had an express and\or implied agreement to employ unnecessarily confrontational tactics, use unreasonable force in deploying multiple tasers for a prolonged period of time, and place Andrew in a vulnerable positional asphyxiating position when Andrew was not suspected of a crime, nor did he threaten the use of force against the officers.

34.     Officers Hill, Koepke, Dirton, Dean, Johnson and Tarkenton's conspiracy to violate Andrew's Fourth Amendment Rights caused the violation of Andrew's Fourth Amendment rights and Andrew was damaged thereby.

## FOR A FOURTH CAUSE OF ACTION
**Battery against the Greenville City Police Department**
**pursuant to the SCTCA Survival and Wrongful Death**

The allegations set forth above are repeated as if included herein.

35.     Andrew Torres was forced to endure great conscious pain and suffering before his death. Andrew Torres filed no action during his lifetime, but under the laws of South Carolina this action survives and may be asserted by his Estate under the Survival Statute. Plaintiff Dennis claims damages for the wrongful death of Andrew Torres and for the loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses under the South Carolina Wrongful Death Statute.

36.     The City of Greenville is vicariously liable for the acts of Hill, Koepke and Dirton acting within the course and scope of their employment. The acts and omissions of the defendants in seizing Andrew with the use of tasers, placing him face down, with handcuffs behind his back and the full weight of three officers in a position of asphyxiation without his consent or legal justification constitutes the tort of battery.  As a direct and proximate result of this illegal touching, Andrew suffered great physical harm and death.

**FOR A FIFTH CAUSE OF ACTION**
**Assault against the City of Greenville's Police Department**
**pursuant to the SCTCA Survival and Wrongful Death Claim**

The allegations set forth above are repeated as if included herein.

37.     The City of Greenville is vicariously liable for the acts of Officers Hill, Koepke, and Dirton acting within the course and scope of their employment. The acts and omissions of the officers placed Andrew in imminent danger of an unlawful touching by racing down to hall and preventing the closing of his door, deploying the tasers and forceful holding of Andrew in a positional asphyxia constitutes the tort of assault.  As a direct and proximate result of this illegal assault, Andrew suffered great anxiety and fear ultimately contributing to his death.

**FOR A SIXTH CAUSE OF ACTION**
**Negligence pursuant to the SCTCA against**
**the City of Greenville Survival and Wrongful Death Claim**

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

38.   The City of Greenville is vicariously liable for the acts and omissions of the individual officers involved in Andrews Torres' death.   The City owed Mr. Torres

statutory and common law duty of due care in the taking an individual into the protective custody on an order from the probate court.  The City of Greenville had actual and constructive knowledge of Andrew Torres' mental disability.  The City had actual and constructive knowledge and it was foreseeable that individuals suffering from severe mental illness such as paranoid schizophrenics are susceptible to death if handled by normal police use of force polices.  Specifically, they were aware that confrontational and aggressive techniques would produce anxiety in the mind of a mentally ill person and likely produce resistance to being taken into custody.  Additionally, they were aware the use of multiple tasers for an extended period of time creates an unreasonable risk of death.  They were also aware that handcuffing a person with their arms behind them and placing an individual on his stomach with the weight of officers on top created a foreseeable risk of death.  Each of these use of force tactics individually and\or in combination caused the death of Andrew Torres in the form of cardiac arrest\arrhythmia from electric shocks, positional asphyxia and\or excited delirium.

39.     The City of Greenville had a duty to take Andrew Torres into custody for his own protection.  The City breached that duty in a negligent and grossly negligent manner and failed to exercise due/slight care in the use of confrontational tactics creating fear, panic and anxiety in Andrew, the repeated and extended use of multiple tasers, handcuffing Andrews arm's behind his back and placing him on his stomach with the full weight of three officers for and extended amount of time.

40.   As a direct and proximate cause of the aforementioned acts of defendants, Andrew Torres suffered great physical damage and death.  His estate is entitled to compensatory damages according to proof.

**FOR A SEVENTH CAUSE OF ACTION**
**Municipal Liability against the City of Greenville pursuant to 1983**
**Failure to train, Failure to supervise and allowing a custom and practice to exist**
**allowing the use of excessive force in taking the mentally ill into protective**
**custody Survival and Wrongful Death Claim**

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

41.	At all times material hereto, the City of Greenville through its chief policy maker in law enforcement, Chief of Police Wilfong, had a duty to adopt and implement rules and procedures to ensure that her officers use a reasonable amount and degree of force in the apprehension of mentally ill persons who are being taken into custody not because of the commission of a crime but for their own protection.  This duty includes, but is not limited to, the duty to create, adopt and implement rules, regulations, practices and procedures which clearly direct deputies as to the appropriate use of tasers and force when encountering mentally ill persons.

42.	Chief of Police Wilfong's failure to adopt and implement adequate policies, training and supervision regarding her officers' use of force on mentally ill individuals, including, but not limited to the use of confrontational verbal aggression, immediate show of physical force, tasers, the dangers of positional asphyxia, and the dangers of excited delirium resulted in the blatant use of excessive force by the Police Officers against Mr.Torres as described herein.

43.	At all times material hereto, the Chief of Police knew or was deliberately indifferent that persons being seized by her officers might be fully restrained yet exhibit passive resistance to lawful commands relating to the completion of standard handcuff procedures.

44.     At all times material hereto, the Chief of Police knew and\or was deliberately indifferent that a policy for the use of force was necessary in order to avoid repeated use of excessive force by her deputies in such circumstances.

45.     At all times material, and in light of the Chief of Police's customary and regular use of force and taser weapons in seizing mentally ill persons as one of the many methods of force regularly used by her officers, the Chief of Police was aware that the failure to establish a custom, policy and practice relating to the use of tasers against passive resisters resulted in repeated instances of excessive force resulting in serious injury or death.

46.     At all times material, defendant Chief of Police Wilfong was deliberately indifferent to the known probability that instances of excessive force due and use of tasers against passive resisters would occur, such as in the case of Mr. Torres, by failing or refusing to establish a use of force policy, training or supervision inclusive of excessive force, deployment of taser weapons, and full body restraint.

47.     As a direct, proximate and foreseeable result of Chief Wilfong's policies, customs and practices, Mr. Torres suffered a violation of his Fourth Amendment right to be free from unreasonable seizures.  He suffered conscious pain and suffering during his life time and his family have suffered a great loss as a result of Mr. Torres' death. They also have had to bear the costs of the funeral and burial expense.

48.      Defendant Chief of Police acted with deliberate indifference in causing the aforesaid constitutional violation by Defendants officers Koepke, Hill, and Dirton to occur, as follows:

(a) Defendant Wilfong failed to adequately train and educate her officers, including Officers Kopeke, Hill, and Dirton in the use of force and the use of tasers as a means of force, thereby creating an atmosphere of illegal and unconstitutional behavior with respect to the use of force, in deliberate indifference and reckless disregard to the health and welfare of persons seized by the officers.

(b) Defendant Chief of Police failed to train and educate her officers, including Defendants Koepke, Hill, and Dirton with respect to the use of force applications which she knew that her officers were using and which posed a serious risk of personal injury including, but not limited to, the use of tasers against non-violent, mentally-ill persons as a means to compel compliance and allowing full restraint in an asphyxiating position.

(c) Defendant Chief of Police failed to adequately monitor and evaluate the performance of her officers including defendants Koepke, Hill, and Dirton including their use of force applications, in deliberate indifference and reckless disregard to taking persons in custody, including Mr. Torres.;

(d) Defendant Chief of Police failed to adequately monitor and evaluate the appropriateness of her Officers' use of tasers as a means of deadly force, in deliberate indifference and reckless disregard to persons in custody, including Mr. Torres;

(e) Defendant Chief of Police had and has a policy, custom and practice of allowing her Officers, including Defendants Koepke, Hill, and Dirton to use deadly, excessive, and/or unreasonable force without fear of discipline, thereby creating an atmosphere where such behavior is accepted, approved and ratified, in reckless disregard and deliberate indifference to the health and welfare of persons in his custody, including Mr. Torres;

(f) Defendant Chief of Police ratified and approved of the use of excessive force by tasers, including the use of force against Mr. Torrese described in paragraphs 1, adopting these uses of excessive force as acceptable policy and practice.

49.    The aforementioned actions committed by Defendants Koepke, Hill, and Dirton were proximately caused by the de facto policies, customs, and practices of Defendant Chief of Police, the failure to establish proper policies, customs and practices, the delegation of policy-making authority to her Officers, her failure to train on the use of tasers, failure to train in the apprehension of mentally ill persons, and her ratification of excessive force, as alleged in paragraphs herein.

50.    The aforementioned policies, customs, practices and omissions of Chief of Police and the City of Greenville, alleged herein, were the underlying cause of Mr.Torres' death.

### FOR A EIGHTH CASUE OF ACTION
**American with Disabilities Damages Claim against the City of Greenville for failing to accommodate Andrew Torres known mental disability**

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

51.    The Defendant, City of Greenville is a local governmental entity which engages in offering and providing police services to members of the general public who are subject to serve orders of commitment on mentally ill citizens and is a recipient of federal funds.

52.    Section 504 requires the recipients of federal funds to make reasonable accommodations to persons with disabilities in their facilities, program activities and who receive their services It further requires such recipients to modify such facilities, services,

and programs as necessary to accomplish this purpose. The City of Greenville is the recipient of federal funds, and is subject to the mandate of Section 504.

53.     The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such services include, *inter alia,* provisions necessary to achieve mental health care and protect individuals known to suffer from mental illness from in custody death from the use of force when law enforcement takes an individual into protective custody for mental evaluation and treatment.

54.      At all times during his interaction with police, Andrew was suffering from severe impairments including Schizophrenia Paranoid type. Andrew Torres was a qualified individual with a disability under Section 504 and the ADA.

55.     Defendant City of Greenville is an entity which must comply with Section 504 and the ADA.

56.     Defendants Wilfong, Hill, Koepke, Dirton, Dean, Johnson, and Tarkenton are individuals who are employed by, associated with or otherwise acting as authorized representatives or agents of Defendant City of Greenville.

57.     At all times herein mentioned, the above-named Defendants, and each of them, were the agents, representatives, principals and/or employees of each other and, in doing the things alleged herein, were acting within the course and scope of said agency or employment.

58.    During the encounter at Andrew Torres' home, Andrew was exhibiting behaviors that were incoherent, erratic, uncooperative and/or irrational, all manifestations of his disabilities.

59.    Instead of accommodating Andrews incoherent, erratic, uncooperative and/or irrational behaviors, the Defendants, and their agents and employees, refused to provide the necessary level of accommodation to Andrew's mental illness, thereby causing him to die.  The cause of death was individually or in combination with cardiac arrest\arythmia, fear, use of tasers, positional asphyxia, and\or excited delirium syndrome.

60.    Andrew's death was preventable by proper application of use of force techniques for taking mental disabled individuals into protective custody. Instead of accommodating Andrew Torres' needs, the City of Greenville denied him adequate mental health services and programs available to others that would have prevented his death. The failure to accommodate Andrew's disabilities was intentional and/or deliberately indifferent to Andrew Torres' rights under Section 504 and Title II of the ADA and was the proximate cause of his death.

### FOR A NINTH CASUE OF ACTION
**American with Disabilities Declaratory and Injunctive Relief against the City of Greenville for failing to accommodate Andrew Torres known mental disability**

The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.

61.    The City of Greenville is a local governmental entity which engages in offering and providing police services to members of the general public who are subject to serve orders of commitment on mentally ill citizens and is a recipient of federal funds.

62.     The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self-evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

(a) A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

(b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

63.     Upon information and belief, the City of Greenville has failed to comply with the self evaluation required by Section 504 and the ADA.   Plaintiff is informed and believes this court should declare the current status of the City of Greenville polices as relating to reasonable accommodation to mentally ill individuals subject to protective orders requiring involuntary commitment to a medical facility.   The City of Greenville is out of compliance with those statutes, and Plaintiff requests injunctive relief in the form of modifications to meet the requirement of law.

## PRAYER

WHEREFORE, plaintiff prays for judgment as follows:

1)  Compensatory and punitive damages against the individual defendants on the federal 42 USC 1993 claims;

2)  Compensatory damages against the City of Greenville on the federal municipal liability claim and compensatory damages under the South Carolina Tort Claims Act;

3)  Attorneys' fees and the costs of suit necessarily incurred pursuant to 42 USC 1988; and Attorney Fees costs and litigation expenses pursuant §§12133, 12188

4)  Injunctive and declaratory relief under the ADA and Rehabilitation Act

4)  Such further relief as the Court deems just or proper.


/William H. Ehlies II
WILLIAM H. EHLIES, II
ATTORNEY AT LAW
Building A, Suite 201
310 Mills Avenue
Greenville, South Carolina 29605
Ph. 864-232-3503
Fax 864-232-4854
hank@ehlieslaw.com


s/J. Christopher Mills
J. CHRISTPHER MILLS, LLC
ATTORNEY AT LAW
P.O. Box 8475
Columbia, South Carolina 29202
Ph.  803-748-9533
fax  803-753-9123
chris@chrismillslaw.com

ATTORNEYS FOR THE PLAINTIFF


June 26, 2012